UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHARLES EDWARD SCOTT,

    Plaintiff,

v.

DETECTIVE JAMES MATHEWS,

    Defendant.

Civil Action No. TDC-23-2253

**MEMORANDUM OPINION**

    Self-represented Plaintiff Charles Edward Scott, an inmate at the Eastern Regional Jail in Martinsburg, West Virginia, has filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendant Detective James Mathews of the Montgomery County Police Department ("MCPD") in Montgomery County, Maryland, in which he alleges that Mathews violated his constitutional rights by arresting Scott pursuant to a warrant which lacked probable cause, and in which Mathews knowingly omitted material facts. Scott also filed a Motion for Appointment of Counsel. ECF No. 8. Mathews has filed a Motion to Dismiss. ECF No. 12. Though informed of his right to respond, Scott has not filed a memorandum in opposition to the Motion. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED, and the Motion for Appointment of Counsel will be DENIED.

**BACKGROUND**

    Scott alleges that on February 14, 2022, he was arrested by the MCPD pursuant to a warrant unsupported by probable cause. Scott states that in applying for the arrest warrant, Mathews knew

that it was unsupported by probable cause and omitted material facts that would negate probable cause. Scott claims that Mathews did so because he had led a separate investigation into Scott in West Virginia and sought to keep Scott incarcerated while he and West Virginia prosecutors spoke with Scott's co-defendants in a pending criminal case. Scott asserts that Mathews omitted key details from the application for an arrest warrant, including failing to describe the nature of documents seized during a search of an apartment, failing to disclose that the seized documents contained a lease referencing "Anthony Shants" as associated with the unit, and failing to acknowledge that a firearm seized from the unit was registered to Shants, the lessee of the unit. Scott further alleges that Mathews should have run the serial number on the firearm, that Mathews implied that Scott's possession of the keys to an apartment supported probable cause, and that Mathews misleadingly implied that the weapon in question was an illegal "ghost gun" obtained on the street when the gun in question was legally present in the apartment. Compl. at 4, ECF No. 1.

Scott has attached several documents as exhibits to the Complaint. He has provided the arrest warrant and statement of charges issued by the District Court of Maryland for Montgomery County, which lists five offenses in the following numbered counts: (1) possession of a firearm during and in relation to a drug trafficking crime; (2) conspiracy to distribute controlled dangerous substances ("CDS"); (3) possession with intent to distribute CDS; (4) illegal possession of a regulated firearm; and (5) possession of a firearm after a felony conviction. A commissioner signed the warrant on January 13, 2022, and the warrant was returned executed on February 14, 2022.

Scott also submitted the Application for Statement of Charges ("the Application"), dated January 13, 2022, in which Mathews asserted the following facts in support of probable cause to arrest Scott. On March 18, 2020, Mathews reviewed a video showing Scott, whom Mathews

2

recognized from a previous investigation, discharging a handgun in a wooded area. In the video, Scott was standing by another individual who was later identified as Scott's cousin, Anthony Shants. The firearm in the video "appeared to be a Glock handgun with a unique side-charging handle and circular 'ghost' sights." Application at 5, Compl. Ex. 1, ECF No. 1-1. At that time, Scott was prohibited from possessing a firearm or ammunition in Maryland due to a previous conviction for conspiracy to possess with intent to distribute CDS, for which he was incarcerated in 2014. In July 2020, another officer conducting a separate investigation into one of Scott's known associates obtained an arrest warrant for the associate. During a post-arrest search of that associate's cell phone and Instagram account, the other officer obtained several pictures and videos depicting the associate and Scott displaying the same handgun previously referenced in the Application. The associate ultimately pleaded guilty to possession of a firearm after a felony conviction, but the firearm was not recovered during that investigation. On September 10, 2021, Scott was arrested in Gaithersburg, Maryland on a felony drug warrant issued in Martinsburg, West Virginia. Scott's cell phone was seized during the arrest and was searched pursuant to a warrant, revealing a Facebook message conversation in which Scott discussed a planned drug sale at "2010 Baltimore Rd." *Id.* That same day, officers executed a search warrant at 2010 Baltimore Road, Apartment F33, in Rockville, Maryland ("the Rockville Apartment") and recovered a bag of Eutylone, a Glock firearm with a magazine and ammunition, a digital scale, a box of sandwich bags, and documents in Shants's name. In the Application, Mathews stated that he recognized the firearm seized as the same firearm depicted in the video of Scott due to its unique markings, and that the Eutylone recovered was indicative of possession with intent to distribute. He also stated that Scott had had keys to the Rockville Apartment in his possession at the time of his earlier arrest, which officers later used to open the door of that apartment.

Finally, Scott has attached a copy of the "Defendant Trial Summary" from the District Court of Maryland for Montgomery County for Case No. D-06-CR-22-000044, which shows that Counts 2 and 4 in Scott's underlying criminal case were entered *nolle prosequi*. Def. Trial Summary at 1, Compl. Ex. 1, ECF No. 1-1. The Court takes judicial notice of the fact that, as reflected in the court records of that case, Counts 1, 3, and 5 were also entered *nolle prosequi*. See Fed. R. Evid. 201.

In the Complaint, Scott argues that Mathews violated his rights under the Fourth Amendment to the United States Constitution because his submission of the Application and execution of the warrant constituted false arrest and malicious prosecution.

## DISCUSSION

### I. Motion to Dismiss

In the Motion to Dismiss, Mathews seeks dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that it fails to state a plausible claim for relief. Mathews argues that Scott's claim for false arrest fails because his arrest was made pursuant to a facially valid warrant, and that Scott's claim for malicious prosecution fails because the warrant was supported by probable cause. Finally, Mathews argues that he is entitled to qualified immunity.

#### A. Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the

plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

With limited exceptions, an arrest is reasonable under the Fourth Amendment only if supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 214 (1979). An officer has probable cause for an arrest when "facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause requires more than mere suspicion, but less than proof beyond a reasonable doubt. *See Wong Sun v. United States*, 371 U.S. 471, 479 (1963). The arresting officer's belief need not be correct, or even more likely true than false, so long as it is reasonable. *Texas v. Brown*, 460 U.S. 730, 742 (1983). Furthermore, the officer's subjective motivations for making the arrest are immaterial. *Whren v. United States*, 517 U.S. 806, 813 (1996).

**B.    Fourth Amendment Claim**

Scott asserts that Mathews engaged in a false arrest and malicious prosecution, in violation of the Fourth Amendment, when he submitted the Application for an arrest warrant, knowing that it contained material omissions, that thus resulted in an arrest of Scott without probable cause. Generally, a claim that an arrest was not supported by probable cause and resulted in a continuing prosecution is analogous to the common law claims of false arrest and malicious prosecution. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). Ordinarily, "a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid

warrant," and "a claim for false arrest may be considered only when no arrest warrant has been obtained." *See Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). Thus, Scott's claim is properly viewed as one for malicious prosecution. *See Albright*, 510 U.S. at 271 (holding that the Fourth Amendment governs a claim that a plaintiff was subjected to criminal prosecution without probable cause). Although "it is not entirely clear whether [there is] a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (quoting *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009)). Thus, a "malicious prosecution" claim is "simply a claim founded on a Fourth Amendment seizure that incorporates the elements of the analogous common law tort of malicious prosecution." *Id.* (quoting *Snider*, 584 F.3d at 199). These elements include that (1) the defendant seized the plaintiff pursuant to legal process not supported by probable cause; and (2) that the criminal proceedings terminated in the plaintiff's favor. *Id.* Under Maryland law, a common law malicious prosecution claim requires a showing that "(1) the defendant instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or a primary purpose other than bringing the plaintiff to justice." *Okwa v. Harper*, 757 A.2d 118, 130 (Md. 2000).

Here, even construing the facts in the Complaint and its exhibits in the light most favorable to Scott, Scott's claim fails because the Application, even assuming the omissions alleged by Scott, was supported by probable cause. Scott argues that Mathews omitted exculpatory information in the application, including that the apartment was leased to Shants, that other documents found there referenced Shants, and that the gun was registered to Shants. Scott also argues that the

reference to the firearm having a "circular 'ghost' sight" was misleading in that it implied that the firearm was an untraceable ghost gun. Compl. at 4; Application at 5. On a Fourth Amendment challenge based on a claim that a law enforcement officer knowingly submitted an affidavit in support of a warrant application that contained material omissions, there is no Fourth Amendment violation if the affidavit, when considered with the omitted facts, still established probable cause. *See United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (finding that for a material omission to warrant a hearing relating to whether a warrant contained knowing material omissions, the omission must be "necessary to the finding of probable cause" in that "its inclusion in the affidavit would defeat probable cause for arrest") (internal citation omitted).

Here, the videos showing Scott's possession of the firearm, and the later recovery of the firearm, coupled with the fact of his prior conviction, establish probable cause to believe that he illegally possessed a firearm after a felony conviction, as charged in Counts 4 and 5. Moreover, where the affidavit referenced a Facebook message conversation in which Scott set up a meeting at the Rockville Apartment relating to a drug sale, Scott was found with the keys to that apartment, and controlled substances were found inside that apartment, there was probable cause to arrest him for the drug trafficking crimes in Counts 2 and 3. Where Scott was directly linked to drug trafficking at the Rockville Apartment, and was captured on video with the firearm, the fact that Shants was the lessee of the apartment, referenced in the documents found there, and the registered owner of the firearm does not undermine the existence of probable cause. *See* Md. Code Ann., Pub. Safety § 5-133(b)(1) (West 2022) (stating that "a person may not possess a regulated firearm if the person" has met any enumerated condition, which includes having been "convicted of a disqualifying crime."); *Shannon v. State*, 227 A.3d 220, 224-25 (Md. 2020) ("The gravamen of the offense defined in PS § 5-133(c)(1) is the possession of a regulated firearm. The unit of

prosecution is the firearm."). Even if the affidavit clarified that the firearm was not a ghost gun, that fact would not alter this conclusion. Thus, the Complaint and its exhibits demonstrate that the Application, and thus the warrant, was supported by probable cause, and that there were no material omissions in the Application. Where the arrest of Scott was supported by probable cause, Scott's Fourth Amendment claim, whether considered a claim for false arrest or malicious prosecution, will be dismissed.

## II. Motion for Appointment of Counsel

The Court may request an attorney to represent any person "proceeding *in forma pauperis*" who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2018). In civil actions, however, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Where Scott lacks a colorable claim and his case will be dismissed, the Motion for Appointment of Counsel will be denied.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED, and Scott's Motion for Appointment of Counsel will be DENIED. A separate Order shall issue.

Date: June 28, 2024

THEODORE D. CHUANG
United States District Judge